IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| BYRON HARRIS, | ) | CASE NO. 1:18-CV-02199 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN EDWARD SHELDON, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

**Introduction**

Before me by referral[1] is the *pro se* petition of Byron Harris for a writ of habeas

corpus under 28 U.S.C. § 2254.[2] Harris is incarcerated by the State of Ohio at the Richland

Correctional Institution in Mansfield, Ohio[3] where he is serving an aggregate sentence of

29-years-to-life imprisonment imposed in 2016 by the Cuyahoga County Common Pleas

Court upon Harris's conviction at a jury trial on one count of aggravated murder, plus

additional specifications and charges.[4]

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge
Jack Zouhary in a non-document order entered on October 4, 2018.
[2] ECF No. 1.
[3] http://drc.ohio.gov/offendersearch. Harris asserts in his petition that he was incarcerated
at the Mansfield Correctional Institution in Mansfield, Ohio at the time he filed the
petition. ECF No. 1 at 1.
[4] See, ECF No. 6 at 7 (citing record).

In his petition, Harris raises six grounds for relief.[5] The State, in its return of the writ, maintains that the petition should be dismissed in part as non-cognizable and/or procedurally defaulted and denied in part on the merits after AEDPA review.[6] Harris has filed a traverse.[7]

For the following reasons, I will recommend that the petition be dismissed in part and denied in part as is more fully set forth below.

## Facts and Proceedings in the Trial Court

The Ohio appeals court made extensive background factual findings that can here be more briefly stated.[8]

In the early afternoon of August 17, 2014, Tyler Spaulding was riding a bus home after work.[9] Sitting in front of him were four people who Tyler believed were talking about robbing him.[10] Fearing for his safety, Tyler called his sister, told her what he was hearing, and asked her to have his brother Isaac meet him at the bus stop.[11]

---

[5] ECF No. 1 at 8-15.
[6] ECF No. 6 at 19-50.
[7] ECF No. 12.
[8] Facts found by the state appeals court shall be presumed correct by the federal habeas court unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).
[9] ECF No. 6 at 2 (quoting Ohio appeals court opinion).
[10] *Id.*
[11] *Id.*

Just prior to Tyler's stop, two of the men who had been talking about a robbery got off the bus.[12] When Tyler arrived at his stop he was met by his brother Isaac and a friend of his cousin's, with two additional persons then joining the group.[13] Tyler told them that what happened on the bus was over and to leave it alone.[14]

Meanwhile on a nearby street, Martinez Hunter was sitting on his front porch when he also received a call from Mary that someone was trying to rob Tyler.[15] As he was leaving his residence to respond to Mary's call, Harris encountered three men who had been on the bus with Tyler – one of whom was Harris and known to Martinez – walking toward East 123rd Street in Cleveland where, unbeknownst to them, they were about to encounter Tyler and his group.[16]

When Tyler saw Harris and his group, he pointed them out and James Parker, Jr., one of Tyler's group, started yelling at Harris's group to stop.[17] When Harris's group did not stop but started walking faster, Tyler's group pursued them.[18] During the chase, Martinez later testified that he saw Harris brandish a .38 gun.[19]

---

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Id.*

[16] *Id*. at 3.

[17] *Id*.

[18] *Id*.

[19] *Id*.

As the two groups ran across a parking lot and then down the middle of a street Harris began shooting at Martinez and Parker.[20] Harris's second shot hit Parker in the hand, causing Parker to retreat and take cover behind a tree.[21] Harris kept advancing toward Parker and firing, hitting him this time first in the arm and then finally and fatally in the chest, from a distance of only three or four feet.[22]

On September 13, 2014, Harris was indicted on one count of aggravated murder plus counts of murder, felonious assault, discharge of a firearm on or near prohibited premises and having a weapon while under disability, along with related firearms, prior conviction, and repeat offender specifications.[23] During the next several months in 2015, Harris filed multiple motions to either dismiss his court-appointed attorney or to be named co-counsel, which motions were later withdrawn,[24] in one instance as the result of Harris's counsel also moving to withdraw from the case.[25]

Prior to trial, the State dismissed one charge of having a weapon while under disability[26] and Harris waived a jury trial on the prior conviction and repeat offender specifications, choosing instead to have these tried to the court.[27] All other counts were tried to the jury.[28] After Harris's motion for acquittal on the charge of felonious assault was denied,[29] the jury, and the court found Harris guilty on all counts.[30]

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] ECF No. 8, Attachment 2 (state court record) at 1-6.

[24] *Id.* at 9-23.

[25] *Id.* at 24, 38.

[26] *Id.* at 42.

[27] *Id.* at 43.

[28] *Id.* at 154.

[29] *Id.* at 642-46.

[30] *Id.* at 45.

On March 11, 2016, following a merger of the two charges of felonious assault and the two charges of discharge of a firearm on or near prohibited premises, Harris was sentenced to an aggregate term of 29-years-to life imprisonment.[31]

## State Appeals After Conviction

### A.    Ohio Court of Appeals

On April 8, 2016, Harris, through new appointed counsel,[32] timely[33] appealed to the Ohio appeals court.[34] In his brief, Harris raised the following five assignments of error:

1.    Appellant was deprived of his right to due process under federal and state law amounting to plain error when the jury as not properly instructed on accomplice liability, affecting the entire trial.

2.    Insufficient evidence supported appellant's conviction for aggravated murder by failing to present sufficient evidence that the shooter acted with prior calculation and design.

3.    The manifest weight of the evidence did not support a conviction for any offense, including those based on accomplice liability, or for conviction as a principal offender.

4.    Defense counsel provided constitutionally ineffective assistance at trial, failing to properly define "accomplice liability," or provide the affirmative defense for the jury contained therein, or object to the state's inflammatory remarks on closing.

---

[31] *Id*. at 51.

[32] *Id*. at 52. Rick Ferrara was appointed to represent Harris on appeal. Michael Cheselka represented him at trial. *Id*. at 51.

[33] A criminal defendant has 30 days from the date his conviction and sentence is journalized to file a notice of appeal with the Ohio court of appeals. Ohio R. App. P. 4(A).

[34] *Id*. at 53-54.

5.     The state committed prosecutorial misconduct by comparing its personal experiences to the evidence at trial into comments during closing arguments.[35]

The State filed a brief in opposition.[36] On May 11, 2017, the Ohio appellate court affirmed the judgment of the trial court.[37] Harris, *pro se*, then sought[38] but, on July 17, 2017, failed to obtain *en banc* review of this appeal.[39]

## B.     Supreme Court of Ohio

While the attempt to obtain *en banc* review of the direct appeal was still pending, on June 16, 2017, Harris, *pro se*, timely[40] filed a notice of appeal with the Supreme Court of Ohio.[41] In his memorandum in support of jurisdiction, Harris set forth the following four propositions of law:

1.     To prove aggravated murder with prior calculation and design the accused and the victim must have more than a superficial awareness of each other[;] also[,] mere possession of a handgun does not prove the accused gave though[t] or preparation in choosing the weapon.

2.     A defendant is deprived of his right to due process under federal and state law amounting to plain error when the jury was not properly instructed on accomplice liability, affecting the entire trial.

3.     Defense counsel provided constitutionally ineffective assistance at trial, failing to properly define accomplice liability or provide the affirmative

---

[35] *Id*. at 63.
[36] *Id*. at 117.
[37] *Id*. at 152-88.
[38] *Id*. at 189, 192, 202.
[39] *Id*. at 206.
[40] Ohio Supreme Court Practice Rule 7.01(A)(1)(a)(i) states that an appeal must be filed within 45 days of the appellate judgment for which review is sought. Here, the appellate decision was entered May 11, 2017 and the notice of appeal was filed with the Supreme Court of Ohio on June 16, 2017 – 36 days.
[41] ECF No. 6, Attachment 2 at 207.

defense from [*sic*] the jury contained therein, or object to the state's inflammatory remarks on closing.

4.     The state made improper statements to the jury during closing arguments.[42]

The State did not file a responsive brief and, on October 11, 2017, the Supreme Court of Ohio declined to accept jurisdiction.[43] The record does not indicate that Harris then sought a writ of certiorari from the Supreme Court of the United States.

## C.     Rule 26(B) application to re-open the appeal

While his direct appeal was still pending in the Supreme Court of Ohio, Harris, *pro se,* on August 17, 2017[44] filed an application under Ohio Appellate Rule 26(B) to re-open his appeal.[45] The State, in its brief in opposition, argued that Harris's application was beyond the 90-day deadline and also that he had also failed to file an affidavit attesting to his appellate counsel's ineffectiveness.[46] Harris replied arguing that his application was timely based on when he had placed it into the prison mail system.[47]

On March 7, 2017, the Ohio appeals court denied the application, ruling that it was untimely filed and that Harris had not shown good cause for the late filing.[48] Specifically, the appeals court noted that, to be timely, Harris needed to have filed his application to re-

---

[42] *Id*. at 209.
[43] *Id*. at 264.
[44] Harris's application itself says he placed it into the prison mail system on August 4, 2017. *Id*. at 277. The application was marked as filed by the Ohio appeals court on August 14, 2017. *Id*. at 265.
[45] *Id*. at 265.
[46] *Id*. at 280.
[47] *Id*. at 287.
[48] *Id.* at 287.

open within 90 days of May 11, 2017 – the date on which the appeals court journalized its decision.[49]  The court calculated that the date of actual filing was 5 days beyond the deadline.[50] The court further found that Ohio law does not permit good cause for any delay in filing to be attributed to delays in the mail.[51]

On April 18, 2018, Harris, *pro se*, filed a notice of appeal from that decision with the Supreme Court of Ohio.[52] The State did not file a brief in response. On June 27, 2018, the Supreme Court of Ohio declined to accept jurisdiction.[53]

**D.** **Post-Conviction Proceedings**

Harris filed five post-conviction motions in the trial court:

1. October 24, 2016 – *pro se* motion challenging jurisdiction.[54] That motion was denied[55] and no appeal was filed.

2. January 4, 2017 – *pro se* motion for a new trial.[56] The State opposed the motion.[57] There is no record that the trial court ruled on the motion, but, for present

---

[49] *Id*.at 290.
[50] *Id*.
[51] *Id.* at 290-91.
[52] *Id*. at 301.
[53] *Id*. at 385.
[54] *Id*. at 319.
[55] *Id*. at 324.
[56] *Id*. at 325.
[57] *Id*. at 343.

purposes I note that under Ohio law, when a trial court fails to rule on a motion it is presumed that it was overruled.[58]

3. May 31, 2017 – *pro se* petition to vacate/ set aside the conviction and sentence.[59] The State opposed the petition as untimely filed and because it failed to state a ground for relief.[60] The trial court denied the petition.[61]

4. June 19, 2018 – motion for re-sentencing.[62] The record does not show that the trial court ruled on this motion and so, as noted above, it is presumed to be overruled.

### Federal Habeas Corpus Petition

On October 11, 2018, Harris, *pro se*, timely[63] filed the present petition for federal habeas relief.[64] In the petition, Harris presents the following six grounds for habeas relief:

> ONE: Petitioner was deprived of Fourteenth Amendment rights through the jury trial protection of the Sixth And Fourteenth Amendments of the United States Constitution, of petitioner's due process

---

[58] *Curry v. Warden*, 2011 WL 335665, at *5-6 (S.D. Ohio Jan. 4, 2011) (R&R), *adopted*, 2011 WL 332562 (S.D. Ohio Jan. 31, 2011).

[59] ECF No. 6, Attachment 2 at 346.

[60] *Id*. at 349.

[61] *Id*. at 352.

[62] *Id*. at 353.

[63] Harris states in the petition itself that he placed it into the prison mail system on September 9, 2018. ECF No. 1 at 17. As is well-known, a federal habeas petition by an incarcerated *pro se* petitioner is deemed filed under the prison mailbox rule when it is placed into the prison mail system for forwarding to the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988). In addition, because Harris's conviction became final on October 11, 2017 when the Supreme Court of Ohio declined jurisdiction over his direct appeal, the filing of this petition on September 9, 2018 is within the one-year period set by 28 U.S.C. § 2254(d)(1).

[64] ECF No. 1.

right under federal and state law amounting to "plain error" when the jury was not properly instructed on accomplice liability affecting the entire trial.

TWO:       Insufficient evidence supported petitioner's conviction for aggravated murder by failing to present sufficient evidence that the shooter acted with prior calculation and design.

THREE:       Petitioner's counsel provided constitutionally ineffective assistance at trial [by] failing to properly define "accomplice liability" or provide the affirmative defense for the jury contained therein, or object to the state's inflammatory remarks on closing, all] violating petitioner's 6th Amendment right of the United States Constitution.

FOUR:       The State committed prosecutorial misconduct by comparing its [*sic*] personal experience to the evidence at trial into comments during closing argument violating the petitioner['s] [rights under the] 14th Amendment of the United States Constitution.

FIVE:       The court abused its discretion in violation of the 14th Amendment of the United States Constitution due process and equal protection clause[s] by refusing the petitioner the right to remove counsel at a critical stage of the proceedings enforcing [*sic*] a 6th Amendment constitutional violation do [sic] to ineffective assistance of counsel and refusing the petitioner of [*sic*] his right to [*sic*] the 6th Amendment to have his own counsel of choice[,] denying the petitioner a fair & just trial.

SIX:       Petitioner was denied his 14th and 6th Amendment right to due process & counsel of choice under state and federal law when petitioner filed his 26-B [application] timely and the Eighth District appellate court abused its discretion by refusing to accept the petitioner's application for 26-B application when the petitioner provided proof and a valid cash slip from the prisoner's account office the state still refuse[d] to accept the application [as] timely [filed].[65]

The State, in its return of the writ, contends that:

*Ground One* (failure to give jury instruction as to accomplice liability) should be dismissed as a non-cognizable state law claim or, alternatively, as procedurally defaulted.[66]

---

[65] ECF No. 1 at 8-14.
[66] ECF No. 6 at 19-27.

10

*Ground Two* (insufficiency of the evidence as to aggravated murder) should be denied after AEDPA review because the Ohio appeals court decision in this regard is not an unreasonable application of the clearly established federal law of *Jackson v. Virginia*.[67]

*Ground Three* (ineffective assistance of trial counsel) should be denied on the merits after AEDPA review because the decision of the Ohio appeals court in this regard is not an unreasonable application of the clearly established federal law of *Strickland v. Washington*.[68]

*Ground Four* (prosecutorial misconduct) should be dismissed as procedurally defaulted.[69]

*Ground Five* (right to remove counsel) should be dismissed as procedurally defaulted.[70]

*Ground Six* (dismissal of Rule 26(B) application) should be dismissed as a non-cognizable state law claim.[71]

As noted above, Harris filed a traverse.[72]

## Analysis

### A.    Preliminary Observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Harris is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition.[73] Thus, he meets the in-custody requirement of the federal statute conferring jurisdiction over this petition.[74]

---

[67] *Id*. at 27-34 (applying *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[68] *Id*. at 34-41 (applying *Strickland v. Washington*, 466 U.S. 668 (1984)).

[69] *Id*. at 41-46.

[70] *Id*. at 46-49.

[71] *Id*. at 49-50.

[72] ECF No. 12.

[73] As noted above, Harris was incarcerated at the Mansfield Correctional Institution at the time the petition was filed and has subsequently been transferred to the Richland Correctional Institution, where he is currently held.

[74] 28 U.S.C. § 2254(a).

2.      There is also no dispute, as detailed above, that the petition was timely filed under the applicable statute.[75]

3.      In addition, Harris states,[76] and my own review of the docket confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[77]

4.      Further, it appears that the claims here have been exhausted as that is understood in federal law.[78]

5.      Finally, Harris, who is proceeding *pro se*, has not requested the appointment of counsel,[79] nor sought an evidentiary hearing.[80]

Standards of review

## B.      Standard of Review

### (1)      *Non-cognizable claims*

A claim for relief based solely on a purported error of state law is not cognizable in a federal habeas proceeding.[81] Error in the application of state law gives rise to a federal habeas claim only if such an error renders the underlying proceeding so fundamentally unfair as to deny the petitioner due process.[82] Lack of fundamental fairness is understood

---

[75] 28 U.S.C. § 2254(d)(1).

[76] ECF No. 1 at

[77] 28 U.S.C. § 2254(b).

[78] 28 U.S.C. §§ 2254(b)(1), (c).

[79] 28 U.S.C. § 2254(h); Rule 8 (c), Rules Governing 2254 Cases. I note here that while Harris has not sought an appointment of counsel for purposes of this habeas petition, he does include as a prayer for relief "a new trial with new counsel." ECF No. 1 at 17.

[80] 28 U.S.C. § 2254 (e)(2).

[81] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[82] *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991).

"very narrowly,"[83] as only those actions that violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions."[84]

The petitioner bears the burden of showing a lack of fundamental fairness.[85] In analyzing the claim, the federal habeas court is bound by the rulings of the state's highest court as to state law[86] and may not second-guess a state court's interpretation of its own procedural rules.[87]

## *(2)    Procedural Default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA review in a federal habeas court.[88] Such a claim is subject to dismissal by the federal court as procedurally defaulted if the petitioner failed to raise it in the state court when remedies were still available or the petitioner violated a state procedural rule when attempting to raise it.[89] The petitioner must initially afford the state courts an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[90] This requires that a petitioner go through one complete round of the state's established appellate review procedure,"[91] presenting his claims to "each appropriate state court."[92] Moreover, the

---

[83] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[84] *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

[85] *Bey v. Begley*, 500 F.3d 514, 521 (6th Cir. 2007).

[86] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[87] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[88] *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[89] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[90] *Duncan v. Henry*, 518 U.S. 364, 365 (1995) (*per curiam*) (citation omitted).

[91] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[92] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

petitioner must fairly present those state courts with the same claim on the same theory as what is presented to the federal court.[93]

When the state asserts that a violation of a state procedural rules is the reason why a state court did not reach the substance of the petitioner's claim, and so is the basis for a procedural default, the Sixth Circuit has established a four-part test to determine if such a procedural default will bar federal habeas review of the claim.[94]

To that end:

1. There must be a state procedural rule in place that was not followed;

2. The state court must have denied consideration of the claim on the grounds of the petitioner's failure to follow that rule;

3. That state rule must be an "adequate and independent" state law ground that is both "firmly established and regularly followed;"

4. To avoid the default, the petitioner must demonstrate either cause for the default and a resulting actual prejudice to him arising from the federal court not addressing his claim, or show that a failure to consider his claim would result in a fundamental miscarriage of justice.[95]

To establish "cause," the petitioner must show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.[96] To show "prejudice" from upholding the default, a petitioner must show that the alleged error worked to his actual and substantial disadvantage.[97]

---

[93] *Picard v. Connor*, 404 U.S. 270, 278 (1971).
[94] *Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010).
[95] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citations omitted).
[96] *Id.*
[97] *Id.*

*(3)*    ***AEDPA***

Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by a state court unless that adjudication either:

> 1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or
>
> 2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[98]

A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a matter of law or if the state court decides differently than the United States Supreme Court on a set of materially indistinguishable facts.[99] A state court's adjudication is an "unreasonable application of" clearly established federal law when the state court correctly identifies the governing principle from the decision of the United States Supreme Court but then unreasonably applies that principle to the facts of the petitioner's case.[100]

As the Supreme Court has stated, this standard of "unreasonable application" is an intentionally difficult one for petitioners to meet.[101] Likewise, the Supreme Court has held that AEDPA limits a federal habeas court to the record that was before the state court,[102]

---

[98] 28 U.S.C. § 2254(d).
[99] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).
[100] *Id*. at 413.
[101] *Harrington*, 562 U.S. at 102.
[102] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

and has cautioned that simply finding that a state court decision was incorrect does not necessarily mean that it was unreasonable.[103] Further, to warrant AEDPA deference, the state court decision on the merits need not give any explanation for the result,[104] nor directly cite any Supreme Court case, so long as neither the reasoning nor the result contradicts the United States Supreme Court.[105]

C.      Application of Standards

(1)      Ground One

In Ground One, Harris contends that, under a plain error analysis, he was deprived of due process when the jury was not instructed as to accomplice liability.

The Ohio court, in considering the claim on direct appeal, first noted that Harris failed to object to the jury instructions at trial, thus any review on appeal was limited to plain error review.  This means that Harris bore the burden of showing that the outcome of the trial would clearly have been different but for the claimed error.[106] The Ohio appeals court then stated that although the jury instruction here was not a verbatim recitation of the instruction provided in *Ohio Jury Instructions*, a trial court need not match the instruction in the *OJI*, but must merely  communicate the relevant legal principles and the law to the

---

[103] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).
[104] *Harrington*, 562 U.S. at 98.
[105] *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).
[106] ECF No. 6 at 20 (quoting record).

16

jury.[107] In that light, the Ohio appeals court concluded that the instruction here "mirrored" the applicable complicity statute and so was not erroneous.[108]

The claim here concerning a failure to give a jury instruction on accomplice liability is generally a non-cognizable claim of state law.[109] As the Sixth Circuit stated in *Goff v. Bagley*, [110] "accomplice instructions as a general matter are not required, and … a trial court does not violate a defendant's constitutional rights by failing to give a specific accomplice instruction so long as the jury instructions adequately informed the jury regarding the credibility of witness testimony and alerted the jury to the various considerations that it should take into account in weighing testimony."[111]

Here, Harris raised no issues concerning the adequacy of the instructions on witness credibility and on weighing testimony. Thus, under the teaching of *Goff*, the trial court's failure to give a particular accomplice instruction does not implicate Harris's constitutional rights.

Further, as the Ohio appeals court noted, Harris failed to object to the instructions at trial. Under Ohio's contemporaneous objection rule, failure to object at trial to an alleged trial error waives all but plain error review on appeal.[112] This rule is recognized as an

---

[107] *Id*. at 21-22 (quoting record).
[108] *Id*.
[109] *Id*. at 24.
[110] 601 F.3d 854 (6th Cir. 2000).
[111] *Id*. at 469 (internal quotation and citation omitted).
[112] *State v. Murphy*, 91 Ohio St.3d 516, 532 (2001).

adequate and independent state law ground to foreclose federal habeas relief.[113] Moreover, plain error review by the Ohio court does not constitute a waiver the procedural default, opening the claim to consideration by the federal habeas court.[114]

Finally, Harris cannot excuse the procedural default here by showing cause, prejudice, or a miscarriage of justice. As to cause, the Ohio appeals court, as will be more extensively discussed below in Ground Three, rejected Harris' claim that trial counsel was ineffective for failing to properly define accomplice liability. Read leniently as a claim that trial counsel should have objected to a jury instruction that did not explicitly instruct the jury as to accomplice liability, the fact that the Ohio appeals court found no ineffective assistance on this point precludes Harris from now claiming that ineffective assistance of trial counsel can excuse the default here. Moreover, the Ohio appellate court's conclusion that the instruction given was valid as a matter of Ohio law precludes Harris from establishing prejudice from not having the federal habeas court review the claim. Finally, Harris has not claimed a miscarriage of justice, such as the conviction of one who is actually innocent.

Accordingly, I recommend that Ground One be dismissed as non-cognizable and procedurally defaulted.

---

[113] *Osbourne v. Ohio*,495 U.S. 103, 124 (1990).
[114] *Harris v. Reed*, 489 U.S. 255, 257 (1989).

### (2)    *Ground Two*

In Ground Two, Harris maintains that his conviction for aggravated murder was not supported by sufficient evidence. To that point, he contends, as detailed above, that the state failed to present sufficient evidence that the shooter acted with prior calculation and design.

As is well-known, in reviewing a claim that a conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[115] In applying this test in a federal habeas proceeding, deference is due to the jury's determination[116] and also to the finding of the state appeals court that considered this issue.[117]

In this instance, the Ohio appeals court began its analysis by correctly citing the *Jackson* standard as it is incorporated into Ohio law.[118] The court then considered the element of prior calculation and design in the context of aggravated murder, noting first that prior calculation and design is a distinct concept from "purpose" and that the prosecution must prove both elements.[119]

---

[115] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).
[116] *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).
[117] *Id.*
[118] ECF No. 6 at 29 (quoting record).
[119] *Id.*

19

As to the "prior calculation and design" element that Harris specifically raised, the appeals court observed that the Ohio Supreme Court has identified several factors that should be considered.[120] It further noted that, in short duration emotional situations, pursuing and killing a fleeing or incapacitated victim after an initial confrontation "strongly indicates prior calculation and design."[121] To that point, the Ohio appeals court noted that the Ohio Supreme Court has found that "[p]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes."[122]

Here, the appeals court found, that the jury could reasonably infer that Harris' decision to display a gun while running demonstrated a choice of a murder weapon and that his actions of pursuing and repeatedly firing at a retreating and wounded Parker demonstrated that Harris was acting on a quickly conceived plan to kill Parker.[123]

After applying the relevant standards set out above, I recommend finding that the decision of the Ohio appeals court on this claim was not an unreasonable application of the clearly established federal law of *Jackson*. Therefore, I further recommend that Ground Two be denied on the merits.

### (3)    *Ground Three*

In Ground Three, Harris argues that his trial counsel was ineffective by: (1) failing to properly define accomplice liability; (2) failing to provide the affirmative defense for

---

[120] *Id*. at 29-31.
[121] *Id*. at 31 (internal quotation omitted).
[122] *Id*. (citation omitted).
[123] *Id*. at 32-33 (quoting record).

the jury contained therein; and (3) failing to object to inflammatory remarks in the prosecution's closing argument.[124]

To establish ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that he suffered prejudice as a result.[125] To establish deficient performance, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and overcome the presumption that counsel's actions fell within a wide range of reasonable professional assistance.[126] To establish prejudice, the petitioner must prove that a "reasonable probability" exists that, but for counsel's alleged errors, the result of the criminal proceeding would have been different.[127]

In reviewing this claim, the Ohio appeals court began by correctly stating the *Strickland* standard as applicable in this case.[128] The court then considered the three particular claims of ineffective assistance individually.

First, as to the claim that trial counsel was ineffective for failing to request a different jury instruction as to accomplice liability, the Ohio appeals court observed that because, as was previously found, the trial court had not erred in giving the instruction it

---

[124] I note again that Harris is limited here to same ineffective assistance claims as were presented to the Ohio courts. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).
[125] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[126] *Id*. at 687-89.
[127] *Id*. at 694-95.
[128] ECF No. 6 at 38 (quoting record).

did, there could be no error in Harris's trial counsel failing to object to that proper instruction.[129]

Next, as to the claim that trial counsel was ineffective for not requesting instruction as to the affirmative defense of renunciation, the appellate court again found that there was no basis for Harris's trial counsel to have requested such an instruction.[130] In particular, the appeals court noted that to show renunciation Harris would have to have shown that he "manifested a complete and voluntary renunciation of his criminal purpose."[131]

Harris contends that he manifested that renunciation by running from the scene before the shooting took place and that he wasn't the shooter.[132] While there was evidence suggesting that Harris may have fled the scene, there was other evidence that Harris was the shooter in the midst of the scene, and the jury is charged with reconciling any conflict in testimony.[133]

Moreover, even if the jury did not believe that Harris was the shooter, evidence was presented that Harris handed the murder weapon to the man he claimed was the shooter, demonstrating that Harris was an accomplice to the shooting.[134] The Ohio court then found,

---

[129] *Id*. (quoting record).
[130] *Id*. (quoting record).
[131] *Id*. (quoting record).
[132] *Id*.
[133] *Id*.
[134] *Id*. at 38-39 (quoting record).

under Ohio law, that renunciation is not shown by flight to avoid apprehension for a crime already committed.[135]

Finally, as to any ineffective assistance arising from a failure to object to purportedly improper comments by the prosecution during closing argument, the Ohio court, citing to its analysis in a subsequent section, observed that the prosecutor's comments did not constitute misconduct and so there was no basis for Harris's counsel to object to them, and so no ineffective assistance.[136]

Accordingly, after analyzing this claim under the relevant AEDPA standard, I recommend finding first that the decision of the Ohio appeals court on this ground was not an unreasonable application of *Strickland.* I then further recommend denying Ground Three on the merits.

### (4)    *Ground Four*

In Ground Four, Harris maintains that the prosecutor improperly injected his personal opinions into closing argument and also improperly compared his personal experience to the evidence at trial.

To prevail on a claim of prosecutorial misconduct, the petitioner must show that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[137] Even if the prosecutor's conduct was "undesirable

---

[135] *Id*. at 39 (quoting record).
[136] *Id*. (quoting record).
[137] *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

or universally condemned," the court can only provide relief if the conduct was "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation."[138] To that point, the reviewing court's focus in a claim of prosecutorial misconduct is on "the fairness of the trial, not the culpability of the prosecutor."[139]

Moreover, in a federal habeas proceeding, the habeas court may not grant relief based on a federal constitutional error committed during a state trial unless that error "had a substantial and injurious effect of influence in determining the jury's verdict."[140] As the Sixth Circuit has noted, in addition to meeting the general test for prosecutorial misconduct, habeas claims of prosecutorial misconduct must also meet the *Brecht* standard to warrant habeas relief.[141]

In analyzing this claim, the Ohio appeals court established the standard of review by citing an Ohio case that itself relied on the clearly established federal law of *DeChristoforo*.[142] It also cited an Ohio case that holds that the test for prosecutorial misconduct is (1) whether the prosecutor's remarks were improper and if so, (2) whether they "prejudicially affected a substantial right of the accused."[143]

The Ohio appeals court then addressed the individual claimed instances of prosecutorial misconduct. In the first instance, the Ohio court found that the prosecutor was

---

[138] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).
[139] *Smith v. Phillips*, 455 U.S. 209, 219 (1982).
[140] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).
[141] *Hensley v. McGinnis*, 188 F.3d 507 at *4 (6th Cir. 1999) (table case).
[142] ECF No. 6 at 43 (quoting record).
[143] *Id*. at 42 (quoting record, citing *State v. White*, 82 Ohio St. 3d 16, 22 (1998)).

responding in rebuttal to comments by defense counsel to the effect that the State's witnesses gave inconsistent and conflicting testimony, and that the State was "hiding" from those inconsistencies.[144] In that context, the prosecution reminded the jury that they had to "sift through" the testimony to "look at the consistencies; look at the opportunities for consistencies, like the people who are consistent about actions, to see the actions."[145]

Further, as to the interjecting of opinion into the closing arguments, the Ohio appeals court noted that Harris's defense counsel was the first to interject an opinion as to what he believed the evidence did or did not show.[146] "Even after the State objected and a sidebar was held, defense counsel continued with his beliefs."[147] Thus, the court continued, "it could be argued that any error Harris now argues about on appeal could be deemed invited error."[148]

That said, the appeals court found that the prosecutor's "isolated" comments were not prejudicial and did not amount to plain error.[149] Further, it found that the trial court immediately after closing argument instructed the jury that closing arguments are not evidence and "[i]t is presumed that the jury followed this instruction."[150]

---

[144] *Id.* at 43 (quoting record).
[145] *Id.*
[146] *Id.*
[147] *Id.*
[148] *Id.*
[149] *Id.*
[150] *Id.*

In conclusion, the Ohio court found that the prosecution did not engage in misconduct because the remarks in question did not rise to the level of denying Harris a fair trial.[151] Thus, because there was no prosecutorial misconduct, the Ohio appeals court further found that Harris's defense counsel could not be deemed ineffective for failing to object in this situation.[152]

The State argues first that this ground is procedurally defaulted due to the absence of a contemporaneous objection at trial.[153] It asserts, similarly to what was argued earlier, that Ohio's contemporaneous objection rule is an adequate and independent state law ground to bar federal habeas consideration of this claim and that the Ohio court's plain error does not open the door for consideration of the merits of this claim by the federal habeas court.

In addition, the State notes that Harris cannot excuse the default here because, as to cause, the state appeals court specifically found that his counsel was not ineffective for not objecting to the particular comments, and as to prejudice, the Ohio court found that the comments themselves were isolated and did not serve to deny Harris a fair trial.

Accordingly, I recommend denying Ground Four as procedurally defaulted.

---

[151] *Id.*
[152] *Id.*
[153] ECF No. 6 at 44.

*(5)*     ***Ground Five***

In Ground Five, Harris contends the trial court violated his right to remove his counsel and substitute counsel of choice.

The State asserts that this claim is procedurally defaulted because, although the claim is apparent in the trial record, Harris never raised it on direct appeal and any further review by an Ohio court would be barred by *res judicata*.[154] Ohio's *res judicata* rule is recognized as an adequate and independent state law ground sufficient to bar consideration of the claim by a federal habeas court.[155] Moreover, this claim is not salvaged by being presented as part of Harris's ineffective assistance of appellate counsel claim in his untimely filed Rule 26(B) application. Even if the 26(B) application were timely filed, the default on the underlying claim of the trial court's purported error, caused by the lack of a contemporaneous objection, cannot be cured by later claiming that appellate counsel was ineffective for not raising the issue on appeal.[156]

As with the earlier procedural defaults, I recommend finding that Harris has not excused them with a showing of either cause or prejudice. To that point, I note that the Ohio appeals court that rejected the Rule 26(B) application as untimely filed noted in a footnote:

Several times during the pretrial proceedings Harris filed motions to dismiss his attorney , and each time Harris withdrew his motion…[At the last occasion Harris] apologiz[ed] for his error and ask[ed] the court to void the motion to dismiss counsel. At

---

[154] *Id*. at 47, citing *State v. Perry*, 10 Ohio St. 2d 175 (1967).
[155] *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).
[156] *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (citations omitted).

the beginning of trial [], Harris's counsel affirmed that they were ready to proceed. Harris participated in this pretrial and never voiced dissatisfaction with his attorney or asked for a hearing concerning counsel. It is understandable [on this record] how appellate counsel could conclude in the exercise of professional judgment that such a record would not support an argument for denial of counsel [by the trial court].[157]

This finding essentially states that there cannot be any prejudice to Harris from this federal habeas court not addressing the merits of Ground Five because the factual basis for the claim – that the trial court denied Harris's attempts to change his counsel – is incorrect. As noted earlier, facts found by the state appeals court in its review of the record are presume true by the federal habeas court.[158]

Accordingly, I recommend denying Ground Five as procedurally defaulted.

**(6)  *Ground Six***

In Ground Six Harris claims that he was denied due process on his choice of counsel claim because the Ohio appeals court abused its discretion in refusing to accept his Rule 26(B) application as timely filed.

The State claims that Ground Six is non-cognizable.[159]

Harris's argument here is that he filed the 26(B) application on time and proved that by providing the prison mail room log.[160] Essentially, Harris appears to have assumed that filing a Rule 26(B) application was governed by the prison mailbox rule that is applicable to federal habeas filings. However, as noted by the Ohio appeals court, the filing rules for

---

[157] ECF No. 6, Attachment 2 at 296, fn. 2.
[158] 28 U.S.C. § 2254(e)(1).
[159] ECF No. 6 at 49-50.
[160] ECF No. 1 at 14.

26(B) applications are strictly computed by reference to the time elapsing between the journalization of the appellate decision that the applicant wishes to re-open and the actual date the application to re-open is received by the clerk of that court.[161] The prison mailbox rule that applies in federal court "does not apply in Ohio."[162]

Here, the state appeals court enforced its procedural rule as to filing and so any substantive claim in that untimely Rule 26(B) application is procedurally defaulted. That timely filing rule for Rule 26(B) applications is an adequate and independent state law ground to foreclose consideration of the underlying claim by a federal habeas court.[163] Further, the default is not waived because the state appeals court in a footnote recounted some of the factual background of the case to determine if there are circumstances potentially warranting a review on the merits.[164]

As with the prior procedural defaults, Harris has not excused this default by showing either cause or prejudice. Indeed, he cannot show prejudice because of the facts shown by the state appeals court do not show any merit to the underlying claim.

Accordingly, I recommend dismissing Ground Six as procedurally defaulted.

---

[161] ECF No. 6, Attachment 2 at 299.
[162] *Vroman v. Brigano*, 346 F.3d 598, 603-04 (6th Cir. 2003).
[163] *Lytle v. Warden*, 2019 WL 4865856, at ** 2-3 (6th Cir. September 6, 2019).
[164] *Salters v. Palmer*, 271 F.Supp. 2d 980, 987 (E.D. Mich. 2003).

**Conclusion**

For the reasons stated above, I recommend that the pro se petition of Byron Harris for a writ of habeas corpus under 28 U.S.C. § 2254 be denied in part and dismissed in part as is more fully set forth above.

IT IS SO RECOMMENDED.

Dated: July 23, 2021                              s/William H. Baughman Jr.
                                                 United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[165]

---

[165] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).